## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **SHARIDAN STILES, et al.,** | **:** | **Case No.** 1:2020-mc-2 |
| | **:** | |
| **Plaintiffs,** | **:** | |
| **v.** | **:** | **Judge _____** |
| | **:** | |
| **WALMART INC., et al.,** | **:** | |
| | **:** | |
| **Defendants.** | **:** | |

## NON-PARTY THE PROCTER & GAMBLE COMPANY'S MOTION TO QUASH
## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

The Procter & Gamble Company ("P&G"), a non-party to the underlying lawsuit[1] (the "Action"), hereby submits this Motion to Quash the Subpoena to Testify at a Deposition in a Civil Action (the "Subpoena") that P&G received on or about January 8, 2019. The Subpoena requests that P&G appear to testify at a deposition scheduled for January 23, 2020 to testify regarding ten extraordinarily broad categories. However, the Subpoena does not satisfy the criteria set forth in Fed. R. Civ. P. 45 and should therefore be quashed. A Memorandum in Support is attached.

Respectfully submitted,

s/ Mark G. Arnzen, Jr.
Mark G. Arnzen, Jr., Esq. (0081394)
Joseph E. Greiner, Esq. (0090525)
DINSMORE & SHOHL LLP
255 East Fifth Street, Suite 1900
Cincinnati, Ohio 45202
Tel: (513) 977-8200
Fax: (513) 977-8141
Email: mark.arnzen@dinsmore.com
        joseph.greiner@dinsmore.com

*Counsel for The Procter & Gamble Company*

---

[1] The underlying lawsuit is captioned *Stiles et al. v. Walmart, et al.*, E.D. Cal., Case No. 2:14-cv-02234.

## MEMORANDUM IN SUPPORT

On January 8, 2020, Plaintiffs Sharidan Stiles ("Stiles") and Stiles 4 U (collectively, "Plaintiffs") attempted to serve P&G with a Subpoena to Testify at a Deposition in a Civil Action (the "Subpoena") in the case of *Sharidan Stiles, et al. v. Walmart Inc. et al*. (*See* Debbie Woelfel Affidavit ("Woelfel Aff."), attached hereto as Exhibit 1, at ¶ 2, Ex. A). The Subpoena commands P&G to appear at Veritext's office in Franklin County, Ohio to give testimony on January 23, 2020. P&G is not a party to the Action.

This Court should quash the Subpoena for several reasons. First, service of the Subpoena on P&G was defective. Even setting aside the service issue, the Subpoena must be quashed because it constitutes an undue burden on P&G. The noticed topics request information that is irrelevant to Plaintiffs' claims in the Action, and clearly constitute a fishing expedition for information unrelated to the Action.

Next, for the bulk of the noticed deposition topics, to the extent the requested information is relevant at all to the Action, Plaintiffs can obtain the information from parties to the underlying litigation. Additionally, the noticed deposition topics are extremely overbroad and it is simply not possible for P&G to prepare a corporate representative to address those broad topics. Finally, the Subpoena must be quashed because it does not provide P&G adequate time to comply.

## FACTUAL BACKGROUND

### A. The Subpoena to P&G

P&G is not a named defendant in the Action, and Plaintiffs' claims in the Action (as discussed in additional detail below) have nothing to do with P&G. However, as the cut-off for

fact-discovery approached in the Action,[2] Plaintiffs subpoenaed P&G for a 30(B)(6) corporate deposition.[3]  Although the Subpoena is dated December 27, 2019, Plaintiffs did not serve P&G with the Subpoena until January 8, 2020.  (*See* Woelfel Aff. at ¶ 4).

The Subpoena, then, provided P&G only two weeks to prepare for a corporate deposition seeking information on 10 extraordinarily broad topics (with eight subcategories for two of the listed topics) and largely seeks information that Plaintiffs could obtain from Walmart or that is irrelevant to Plaintiffs' claims.  (*See* Exhibit A to the Woelfel Aff.).

### B.    The Underlying Litigation

In denying defendants' motion to dismiss Plaintiffs; Fourth Amended Complaint ("FAC") —the operative complaint in the Action—the Court summarized the allegations in the FAC.  *See Stiles et al. v. Walmart, et al.*, E.D. Cal., Case No. 2:14-cv-02234, Opinion and Order on Motion to Dismiss, ECF No. 188, Page 2 of 9.[4]  Plaintiff is the inventor of a disposable personal styling razor with a narrow 1/8- inch blade and ergonomic handle designed for detailed shaving of unique areas of the body like eyebrows, scalp art, and sideburns.  *Id.*  Plaintiff began selling her razor in Walmart stores on a test run basis in 2006, and then in the Wet Shave Department in 2007.  *Id.* Plaintiff was told her product would continue to be sold at Walmart if she sold two units per store per week.  *Id.*

---

[2] The deadline for fact discovery, other than for fact depositions, was January 10, 2020.  The deadline to complete fact depositions is currently set for February 15, 2020.  *See Stiles et al. v. Walmart, et al.*, E.D. Cal., Case No. 2:14-cv-02234, Order Regarding Discovery, ECF No. 291.

[3] Plaintiffs also served P&G with a subpoena *duces tecum* on December 31, 2019 and sought the production of 14 categories of documents, including 8 years' worth of communications between Walmart and P&G related to the "Wet Shave Category," by January 10, 2020.  P&G served its objections to the subpoena *duces tecum* on January 10, 2020. Category 10 of the deposition topics requires P&G's corporate representative to be prepared to discuss all documents produced in response to the subpoena *duces tecum*.

[4] All references to ECF documents herein refer to the *Stiles* case in the E.D. of California.

Despite allegedly exceeding sales minimums, Walmart supposedly began suppressing the growth of Plaintiff's product. *Id.*[5] In 2009, Walmart discontinued sales of the Stiles Razor in the Wet Shave Department, and after selling it in the Beauty Department from 2011 to 2012, Walmart ended Plaintiff's contract in May 2012. *Id.*

Defendant American International Industries ("AI") has manufactured and sold its Ardell Brow Precision Shaper since 2008. *Id.* Plaintiffs claim this product infringes on the Stiles Razor. *Id.* In 2011, Walmart entered into an agreement with AI to sell their Ardell Brow Precision Shaper under Walmart's store brand, Salon Perfect. *Id.* Walmart began selling the Salon Perfect Micro Razor in 2013. *Id.* In 2014, the Executive Vice President of AI allegedly confessed to Plaintiff that Walmart approached AI in 2012 to create a "knockoff" Stiles Razor (i.e., the Micro Razor) to be sold under Walmart's Salon Perfect brand. *Id.* at Pages 2 and 3.

AI allegedly accommodated Defendant's request, and in return Walmart agreed to sell AI's razor. *Id.* at Page 3 of 9. After Defendant terminated Plaintiffs' contract, Stiles claims she pitched Stiles Razors to at least twenty-two other retailers but was rejected by each due to her product being dropped at Walmart. *Id.* Plaintiff contends that due to Defendants' actions, she has effectively been "blacklisted" within the relevant market. Plaintiff further claims that Walmart is the dominant buyer in disposable personal styling razors market, and that AI is the largest manufacturer of personal styling razors, manufacturing Ardell-branded and Salon Perfect razors for Walmart. *Id.* Together, Plaintiff alleges that Defendants Walmart and AI control 98% of the disposable styling razor market. *Id.*

---

[5] According to Plaintiff, Walmart removed the Stiles Razor from high sales stores, including 631 stores selling at least six units weekly. *See* ECF No. 188, Page 2 of 9. Plaintiff also alleges Walmart did not restock the razors where it sold well and tripled the minimum sales requirement in stores where the razor had its lowest performance. *Id.* Walmart also apparently refused to "rollback" the price of the razor to increase sales. *Id.* At the same time, Walmart kept the razor in stock at stores with lower sales. *Id.*

Plaintiff contends that Walmart sought to suppress the growth of the Stiles Razor and eventually end its relationship with Plaintiff to "buy time to switch the market from Stiles' Razors to the lower quality Salon Perfect Micro Razor and the Salon Perfect Precision Shaper . . . ." *See Stiles et al. v. Walmart, et al.*, E.D. Cal., Case No. 2:14-cv-02234, Fourth Amended Complaint, ECF No. 142, ¶ 108(e). Walmart and AI, with their combined market share, allegedly worked to divide customers since AI's Ardell product would be sold at Target and other retailers, while the AI-manufactured Salon Perfect Micro Razor would be sold at Walmart.

Plaintiffs' FAC – the operative complaint in the Action – sets forth Sherman anti-trust claims involving a vertical agreement between Walmart and AI. *See* ECF No. 142. A copy of the FAC is attached hereto as Exhibit 2. The only anti-trust claims in the FAC involve the alleged agreement between Walmart and AI.

## ARGUMENT

## I.     The Subpoena Is Invalid Because It Was Not Properly Served.

As a threshold matter, Plaintiffs did not properly serve the Subpoena in accordance with the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 45(b). Rule 45 requires "delivering a [subpoena] to the named person and, if the subpoena requires that person's attendance, tendering the fees for 1 day's attendance and the mileage allowed by law." Fed. R. Civ. P. 45(b)(1); *see also Beyoglides v. Montgomery Cnty. Sheriff*, S.D. Ohio No. 3:14-cv-158, 2016 U.S. Dist. Lexis 18380, \*3 (Feb. 16, 2016) (specifying "proper service of a subpoena directing a person's attendance under Rule 45 requires not only service of the subpoena itself, 'but also tendering of the witness fee and a reasonable mileage allowance.'") (quotation and internal footnote omitted).

A party serving a subpoena must tender the required witness fees and mileage simultaneously with service of the subpoena. *Id.* Critically, "[f]ailure to tender fees and mileage

4

renders the subpoena invalid and frees the witness of any obligation to attend." *Id.* (quoting *Hazelwood v. Webb*, W.D. Ky. No. 4:06CV-P107-M, 2017 WL 2815583, \*2 (Sept. 26, 2007)). Courts have applied the witness and mileage fee requirements to subpoenas served on non-party corporations. *See Hill v. Homeward Residential, Inc.*, 799 F.3d 544, 552-53 (6th Cir. 2015) (finding district court was within its discretion to quash subpoena as to a corporation where the party serving the subpoena failed to tender required fees). Finally, Rule 45(b)(1) is meant to be strictly enforced. *Id.* at 553 ("these rules were not meant to be 'tempered'; they were made to be 'technical'—[including] the specific amount of fees to be tendered … .").

Here, the Subpoena purports to require P&G's attendance at a deposition. However, Plaintiffs did not tender the appropriate fees for P&G's attendance and mileage along with the Subpoena. (*See* Woelfel Aff. At ¶ 3). "'Failure to tender fees and mileage renders the subpoena invalid and frees the witness of any obligation to attend.'" *Beyoglides*, 2016 U.S. Dist. LEXIS 18380 at \*3 (quoting *Hazelwood*, 2007 U.S. Dist. LEXIS 71778 at \*6). Accordingly, the Court must quash the Subpoena because Plaintiffs did not properly serve it on P&G. *See Bricker v. R&A Pizza, Inc.*, S.D. Ohio No. 2:10-cv-278, 2011 U.S. Dist. LEXIS 100619, \*9 (Sept. 6, 2011) (recognizing the court has no power to enforce an invalid subpoena); *see also Hazelwood*, 2007 U.S. Dist. LEXIS 71778 at \*8 (recognizing the court lacks the authority to waive witness fees).

## II.    The Subpoena Must Be Quashed Under Fed. R. Civ. P. 45(d)(3)(A).

Even if the Subpoena had been effectively served, it must still be quashed because: 1) it presents an undue burden and hardship on P&G; and 2) it does not provide a reasonable amount of time to comply.

Rule 45 of the Federal Rules of Civil Procedure governs quashing subpoenas. Rule 45 provides that a court must quash a subpoena that: "(i) fails to allow a reasonable time to comply;

. . . or (iv) subjects a person to undue burden." *Id.* at (d)(3)(A). The party issuing a subpoena must take reasonable steps to avoid imposing an undue burden on a person subject to the subpoena, *id.* at (d)(1), but "[t]he movant bears the burden of establishing that the issued subpoenas violate Rule 45 of the Federal Rules of Civil Procedure." *Recycled Paper Greetings, Inc. v. Davis*, N.D. Ohio No. 1:08-MC-13, 2008 U.S. Dist. LEXIS 10649, \*7 (Feb. 13, 2008). "In evaluating a motion to quash, the court may consider 'whether (i) the subpoena was issued primarily for purposes of harassment, (ii) there are other viable means to obtain the same evidence, and (iii) to what extent the information sought is relevant, nonprivileged, and crucial to the moving party's case.'" *Id.* (quoting *Bogosian v. Woloohojian Realty Corp.*, 323 F.3d 55, 66 (1st Cir. 2003)).

A court must limit the frequency or extent of discovery if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C). "'District courts should not neglect their power to restrict discovery where justice requires protection for a party or person from annoyance, embarrassment, oppression, or undue burden or expense.'" It is within the court's discretion to quash a subpoena where the testimony or information sought is irrelevant. *Cf. Wilson v. Hill*, S.D. Ohio No. 2:08-CV-552, 2010 U.S. Dist. LEXIS 25443, \*8 (Feb. 22, 2010) (quashing subpoena to produce documents not relevant to claim presented).

### A.     The Subpoena Subjects P&G to Undue Burden.

"Whether a subpoena imposes an 'undue burden' upon a witness is a case specific inquiry that turns on 'such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed.'" *In re CareSource Mgmt. Grp. Co.*, 289 F.R.D. 251, 253 (S.D.

Ohio 2013) (quoting *Am. Elec. Power Co., Inc. v. United States*, 191 F.R.D. 132, 136 (S.D. Ohio 1999)).

In balancing the need for discovery against the burden imposed on the person subpoenaed, courts have found that "concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs." *Misc. Docket Matter No. 1 v. Misc. Docket Matter No. 2*, 197 F.3d 922, 927 (8th Cir. 1999) (quoting *Herbert v. Lando*, 441 U.S. 153, 177 (1979)); *Vietnam Veterans of Am. v. Central Intelligence Agency*, S.D. Ohio No. 2:11-mc-16, 2011 WL 4714000, *5 (Oct. 6, 2011) (quoting *Am. Elec. Power Co., Inc.*, 191 F.R.D. at 136) ("[T]he status of a person as a non-party is a factor that weighs against disclosure.").

In this case, the Subpoena is unduly burdensome because: 1) the deposition topics seek information that is irrelevant to Plaintiffs' claims; 2) the deposition topics seek information that should be available from the parties to the litigation; and/or 3) the topics requested are so overbroad that P&G cannot reasonably prepare for and provide testimony on the requested topics.

### 1. *The Subpoena Is a Broad Fishing Expedition that Seeks Irrelevant Information.*

The Subpoena must be quashed because it is a clear fishing expedition that seeks information entirely unrelated to the claims Plaintiffs assert in their operative complaint. Relevance is one of the express factors courts consider to determine if a subpoena constitutes an undue burden. *See Am. Elec. Power Co., Inc. v. U.S.*, 191 F.R.D. 132, 136 (S.D. Ohio 1999) (quoting *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 53 (S. D. N. Y. 1996)) (In determining whether a subpoena imposes an "undue burden" on a witness, courts looks to the following factors: "relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed."); *Hogan v. Cleveland Ave Restaurant, Inc.*, S.D. Ohio No. 2:15-cv-2883,

2016 U.S. Dist. LEXIS 179160, *6 (Dec. 28, 2016). Establishing relevance is the burden of the party that issued the subpoena. *Hogan*, 2016 U.S. Dist. LEXIS 179160 at *6.

This Court has regularly quashed subpoenas that seek irrelevant information. *See id.* at **7-8 (Quashing a subpoena for documents and deposition testimony where "Plaintiff has failed to establish the relevance of the information sought to its underlying FLSA claims"); *Hendricks v. Total Quality Logistics, LLC*, 275 F.R.D. 251, 2553 (S.D. Ohio 2011) (Granting motion to quash because, among other reasons, "the Court concludes the subpoenas to plaintiffs' former employers and schools all seek irrelevant information. The Court likewise concludes that any subpoenas sent to subsequent employers of plaintiffs Cherry, Gross, Paskal, Hardin and Brown are irrelevant as no counterclaim exists against those plaintiffs."); *Kilroy v. Husted*, S.D. Ohio No. 2:11-cv-145, 2011 U.S. Dist. LEXIS 94827, *5 (Aug. 24, 2011) ("Defendant argues that Plaintiff's subpoenas should be quashed under Rule 45(c)(3)(A)(iv) as unduly burdensome because they seek irrelevant information. This Court agrees.").

Plaintiffs filed their Fourth Amended Complaint on July 11, 2018.[6] (ECF No. 142 ("FAC")). The FAC is the operative complaint and it alleges causes of action for (1) violation of the federal Sherman Antitrust Act, (2) violation of the California Cartwright Antitrust Act, (3)-(4) patent infringement, (5) trade dress infringement, (6) false advertising and false association in violation of the federal Lanham Act (against Walmart only), and (7) intentional interference with prospective economic advantage (against AI only). (*Id.*).

Plaintiffs base their antitrust claims on an alleged agreement between Walmart and AI:

On August 19, 2014, Terri Cooper, Vice President of American Industries, called Plaintiff Sharidan Stiles, unprompted and unplanned, and admitted to Stiles that Walmart had approached her, had given her the Stiles Razor and asked American Industries to copy it. American Industries agreed.

---

[6] A copy of the FAC is attached hereto as Exhibit 2.

(FAC at ¶ 58). Plaintiffs claim this alleged agreement between Walmart and AI to copy the Stiles Razor resulted in their exclusion from the relevant market. (*See id.* at ¶¶ 108, 115-16, 121). Specifically, Plaintiffs allege that the termination of their relationship with Walmart caused other retailers to decline to sell the Stiles Razor:

> Stiles has attempted to sell her razors to numerous other retailers. From 2011 through the beginning of 2014, Stiles or sales representatives working on its behalf made efforts to get Stiles into many retailers including, but not limited to the following: Dollar General, Kroger, Ulta, Target, Walgreens, CVS, Rite Aid, Bed Bath and Beyond, Stop&Shop, Raleys, Costco, Publix, Ahold USA/Royal, HEB, Dollar Tree, Family Dollar, Meijer, Ace Hardware, Whole Foods, QVC, Winco Foods, and Save Mart. Stiles was turned away each time.

> The application process to become a supplier at other retailers requires potential suppliers to provide sales data, often by retailer. Stiles submitted this information, including the information of her decreased sales and termination from Walmart each time she applied to supply another retailer. She was rejected each time.

(*Id.* at ¶¶ 97-98).

Plaintiffs' antitrust claims are subject to the "rule of reason." (*See* FAC at 3, n.1) (confirming Plaintiffs' "Sherman Act and California Cartwright Act" claims are "rule of reason claims"); (ECF No. 101 at 5-9) (Order holding Plaintiffs had failed to allege a "*per se*" antitrust violation and therefore their antitrust claims were subject to the rule of reason, which requires proof of a relevant product and geographic market, the defendant's market power in the relevant market, and anticompetitive effects in the relevant market).

Plaintiffs allege the relevant product market is the market for "the manufacture and sale of Disposable Personal Styling Razors," (FAC at ¶ 79), which Plaintiffs allege is a "distinct market from the general disposable razor market or from battery-operated razors or from a single type use razor, such as an eyebrow only, side shaving razor." (*Id.* at ¶ 80). Based on their exclusion of

"general disposable razors" and "battery-operated razors" from their alleged relevant market, Plaintiffs allege that AI has a large share of the relevant market. (*Id.* at ¶ 95).[7]

On June 28, 2019, Plaintiffs filed a "Motion Seeking Leave to Join Additional Defendants," in which they sought leave to amend their antitrust claims to allege a much broader, allegedly "horizontal" conspiracy among Walmart, AI, and "category advisors" Coty, Pacific World, and P&G. (ECF No. 232). On November 19, 2019, the Court denied Plaintiffs' motion, holding that Plaintiffs had "fail[ed] to address Rule 16(b)'s good cause requirement or how they were diligent in seeking leave to amend." (ECF No. 278 at 2:5-6). The Court explicitly held that Plaintiffs' motion was a motion under Rule 15(a) of the Federal Rules of Civil Procedure. (*Id.* at 1).

Despite the Court's denial of Plaintiffs' motion to expand the case to allege a "horizontal" conspiracy, including some of Walmart's category managers[8] (such as P&G), Plaintiffs' counsel has repeatedly asserted that his clients are still somehow entitled to pursue—and are pursuing—their category management conspiracy theory.  For example, in Plaintiffs' description of the "nature of the action and factual disputes" in a joint statement filed with the Eastern District of California on December 4, 2019, Plaintiffs stated: "At some point prior to trial, Plaintiffs will seek to conform the operative pleading to the facts learned through discovery," and then proceeded to describe the case as follows:

> Defendants Walmart and AI and Stiles' competitors, such as Coty Inc., Pacific World Corporation ("PWC"), and Procter & Gamble Co., exercised their market power to eliminate Stiles from the disposable personal styling razor market and to fix prices. (ECF No. 142 ¶ 109.) They conspired to remove the Stiles Razor from Walmart's shelves and replace it with knock-off products manufactured by Stiles' competitors. (*Id*. ¶¶ 108, 118–19; Ex. 32 (July 28, 2014 Email from AI) (AII_00001592).)

---

[7] Noticeably absent is any allegation that P&G even participates in the relevant market defined by Plaintiffs, much less has a large share of that market.

[8] Category managers, such as P&G, offer assistance to retailers like Walmart in understanding trends for categories and help retailers design their shelves.

(ECF No. 284 at 13:27-14:9); (*see also* ECF No. 282 at 7) (stating Plaintiffs' intention to "conform[]" their complaint "to the facts learned through discovery" and arguing Walmart's "category advisor program . . . is central to its antitrust violations"); (ECF No. 283 at 7) (same).

It is clear, then, that Plaintiffs' Subpoena does not seek information relevant to the allegations in the operative complaint (i.e. the FAC). Instead, the Subpoena is a broad fishing expedition to locate information for an entirely new theory that is not pending in the Action. Plaintiffs themselves confess as much. In a joint pleading filed on January 8, 2020, Plaintiffs admit that the Subpoena to P&G "will be relevant to Stiles' allegations of **horizontal price fixing**." (*See* Joint Statement Regarding Discovery Disagreement, ECF No. 317, Page 34) (emphasis added).

Significantly, however, **there are no such allegations of horizontal price fixing in the FAC**. To the contrary, the FAC itself expressly alleges: "In this Fourth Amended Complaint, Stiles . . . re-allege[s] and amend[s] the § 1 Sherman Act and California Cartwright Act *rule of reason* claims as permitted by the Court in its June 20, 2018, Order." (FAC at 3, n.1) (emphasis added). And the Eastern District of California held long ago that "Plaintiff has not alleged facts sufficient to state a claim of *per se* illegal antitrust conduct." (ECF No. 101 at 5:23-24).

Plaintiffs appear to believe that, because the Court sustained a motion to dismiss the antitrust claims in the FAC, they can now pursue through discovery any theory of antitrust violation they want. But the theory they now wish to pursue—a widespread "category management" horizontal conspiracy theory—appears nowhere in the FAC, involves different parties allegedly engaging in different conduct at different time periods, and supposedly is subject to the "*per se*" rule of illegality rather than the rule of reason. As a justification for this overreach, Plaintiffs circularly argue in the Action (1) that they have a right to amend the pleadings "at any time" in the future to conform the pleadings to their new antitrust conspiracy theory (citing Federal

11

Rule of Civil Procedure 15(b)); and (2) that because the pleadings could be so conformed later, they are entitled to pursue that theory now, and abandon the alleged scheme pled in the FAC.[9]

Plaintiffs are wrong. Federal Rule of Civil Procedure 15(b)—"Amendments During and After Trial"—is "not applicable in [the pre-trial] context." *Mackovich v. United States Gov't*, E.D. Cal. No. 1:06-cv-00422-SMS PC, 2008 U.S. Dist. LEXIS 124630, *8 (May 13, 2008) (denying plaintiff's motion for a continuance pending further discovery and denying plaintiff's motion seeking leave to amend).[10] As is nearly universally recognized, "[t]he purpose of Rule 15(b) is to conform the pleadings to conform to the issues *actually tried*." *Cole v. Layrite Prods. Co.*, 439 F.2d 958, 961 (9th Cir. 1971) (emphasis added); *see also* 3 Moore's Federal Practice - Civil § 15.18 (2019) ("A court may grant leave to amend to conform the pleadings to the evidence presented at trial.").

Plaintiffs have it backwards: the scope of discovery is defined by the "claims and defenses" asserted in the operative pleadings. Fed. R. Civ. P. 26(b)(1). In order to pursue a new theory of antitrust liability—particularly one involving an alleged horizontal agreement among Walmart, AI, and Walmart's category managers to "fix prices" and "share information" rather than a single, vertical agreement between Walmart and AI subject to the rule of reason—Plaintiffs must amend their complaint to plausibly allege such a theory.

Indeed, Plaintiffs appeared to recognize as much when they moved the Court to amend their complaint and join additional parties—which the Court considered to be a motion for leave

---

[9] The parties are litigating the scope of discovery in the Action. (*See* ECF No. 317).

[10] Because the Action is pending in the Eastern District of California, P&G has cited case law from the Ninth Circuit regarding the issue of relevance under Rule 15(b). However, the same standard applies in the Sixth Circuit. *See Darby v. Childvine, Inc.*, S.D. Ohio No. 1:18-cv-00669, 2019 U.S. Dist. LEXIS 201388, *5 (Nov. 20, 2019) ("But Plaintiff responds, and correctly so, that Rule 15(b)(2) is "facially inapplicable." In other words, a party can invoke Rule 15(b) during and after trial, and, even then, only if an unpleaded issue was actually tried.") (internal citations omitted); *Nolan v. Thomas*, E.D. Mich. No. 16-cv-12224, 2018 U.S. Dist. LEXIS 106070, *28 (June 26, 2018) ("Rule 15(b) is not applicable in this case because this case has not yet reached trial, and the plain language of the rule limits its applicability to 'Amendments During and After Trial.'").

to amend prior to trial under Rule 15(a)—to assert the very theory on which they are now trying to seek expansive discovery, including the Subpoena to P&G. The Court denied their motion. (ECF No. 278). Plaintiffs are the masters of their complaint. They pled a vertical agreement between Walmart and AI subject to the rule of reason, and that defines the scope of discovery here.[11]

If the Court adopts Plaintiffs' theory, there would be no limit to the scope of discovery. Under Plaintiffs' view, **any** information would be "relevant" to any case, because Plaintiffs could simply seek to amend their pleadings at trial to incorporate whatever evidence they went fishing for in unbounded discovery. The Federal Rules, though, are not so easily manipulated – and for good reason. Discovery is limited to the claims and defenses in the operative complaint. *See* Fed. R. Civ. P. 26(b)(1).

The Subpoena to P&G seeks evidence that is irrelevant to the claims and defenses raised in Plaintiffs' FAC. Deposition topics four and five, for instance, seek information regarding P&G's communications and interactions with other non-parties to the Action, which clearly have no bearing on Plaintiffs' claims in the FAC. Similarly, topics six and seven seek information regarding safeguards for P&G's participation as a category manager for Walmart. Any safeguards applicable to P&G have no bearing on Walmart and AI's alleged anti-trust behavior, as asserted in the FAC.

Finally, topic 8 seeks: "The monetary and nonmonetary compensation for your service as a Walmart Category Advisor for the Wet Shave Category, whether compensation to You or to Walmart." Any payment exchanged by Walmart and P&G has absolutely no bearing on any of the claims asserted in the FAC.

---

[11] To be clear, none of the information sought in the Subpoena is relevant to any of the Defendants' defenses to the Action, either. As such, Plaintiffs cannot salvage the Subpoenas by pointing to Defendants' defenses.

Simply put, the noticed topics have absolutely nothing to do with Plaintiffs' allegations in the FAC, as articulated by the Eastern District of California, which held: "[T]he only agreement alleged in the [complaint] is that Walmart—as a retailer—propositioned AI—as a manufacturer/supplier—to make a knock off of the Stiles Razor to be sold at Walmart under Walmart's brand, and AI agreed." (ECF No. 101 at 7). Instead, the Subpoena seeks information related to a horizontal antitrust conspiracy that is not part of Plaintiffs' operative complaint and that is not at issue in the Action. Plaintiffs are engaged in a blatant fishing expedition seeking irrelevant information, and the Subpoena must be quashed.

> 2. *The Deposition Topics Request Information Available from the Parties to the Litigation.*

Federal Rule of Civil Procedure 26(b)(2)(C) requires a court to "limit the frequency or extent of discovery if … the discovery sought is unreasonably cumulative or duplicative, **or can be obtained from some other source that is more convenient, less burdensome, or less expensive**." Fed. R. Civ. P. 26(b)(2)(C)(i) (emphasis added). The Southern District of Ohio has routinely quashed subpoenas to non-parties where the information sought in the subpoena is available from a party to the litigation.[12]

Here, to the extent they related to information relevant to the Action in any way, deposition topics 1-3, 6-8, and 10 all seek information that Plaintiffs can and should obtain from Walmart. Those deposition topics all involve P&G's communications, acts, or payments and standards that

---

[12] *See, e.g. Musarra v. Digital Dish, Inc*., S.D. Ohio No. 2:05-cv-545, 2008 U.S. Dist. LEXIS 115789, *11 (Oct. 30, 2008) (refusing to impose the burden of producing documents on a non-party when they were available from a party to the litigation); *Recycled Paper Greetings, Inc. v. Davis*, N.D. Ohio No. 1:08-mc-13, 2008 U.S. Dist. LEXIS 10649, **12-13 (Feb. 13, 2008) (granting a motion to quash subpoena, in part, because "the vast majority of the relevant documents" could have or had been produced by a party to the litigation); *Sagebrush Solutions, LLC v. Health Mgt. Sys. (In re CareSource Mgt. Group Co.)*, 289 F.R.D. 251, 254 (S.D. Ohio 2013) ("Under these circumstances, the Court finds that Sagebrush must first establish that it cannot obtain the discoverable information from its party-opponent before subpoenaing those documents from a non-party.").

involved Walmart and/or that Walmart has access to.  For instance, the first topic seeks information

regarding:

> 3    1.    Communications between You and Walmart from January 1, 2007, to October 1,
> 4    2014, regarding any price, cost, add/delete/carryover decision, rollback, promotions, or store count
> 5    for products in the Wet Shave Category.

Plaintiffs can be obtain any communications P&G had with Walmart from Walmart.

Topic six covers:

> 13    6.    The terms, rights, duties, safeguards, and rules governing Your service as a Walmart
> 14    Category Advisor for the Wet Shave Category and/or your participation in Walmart's Category Ad-
> 15    visor Program.

Walmart would set and determine any "terms, rights, duties, safeguards or rules" regarding P&G's

participation as a **Walmart** Category Advisor.  Plaintiffs can and should simply seek to obtain any

relevant information on this topic from its source – Walmart.  Similarly, topic eight seeks

information regarding compensation paid to or received from Walmart for P&G's participation as

a Walmart Category Advisor for the Wet Shave Category.  To the extent it is relevant to their

claims, Plaintiffs should be required to obtain that information from Walmart as well.

The bulk of the information sought by the Subpoena is duplicative of the information in

the possession of the parties to the Action, and Plaintiffs can and should obtain the information

from them directly.  This Court should therefore quash the Subpoena.

> *3.    The Topics Included in the Subpoena are so Overbroad that P&G Cannot*
> *Reasonably Prepare for the Deposition.*

Although Rule 45 does not expressly list over breadth as a reason for quashing a

subpoena, the Southern District of Ohio has held that the scope of discovery under a subpoena is

the same as the scope of discovery under Rule 26.  *See Hendricks v. Total Quality Logistics, LLC*,

15

275 F.R.D. 251, 253 (S.D. Ohio 2011) (citing *Barrington v. MortgageIT, Inc.*, S.D. Fla. No. 07-61304-CIV-COHN/SELTZER, 2007 U.S. Dist. LEXIS 90555, \*3 (Dec. 10, 2007)).  As a result, courts must examine whether a request contained in a subpoena is overly broad, just as a court is authorized to do for party discovery under Rule 26.  *Id.*  Courts in the Southern District regularly quash subpoenas that are overbroad.[13]

The Subpoena's listed deposition topics are so overbroad that P&G cannot possibly prepare for and provide testimony at a deposition.  Even attempting to do so would constitute an undue burden.

The Subpoena's first noticed topic, for example, covers:

3      1.    Communications between You and Walmart from January 1, 2007, to October 1,
4    2014, regarding any price, cost, add/delete/carryover decision, rollback, promotions, or store count
5    for products in the Wet Shave Category.

In other words, the first topic alone would require P&G to locate, review, and prepare a deponent to discuss **eight years** of communications between P&G and Walmart – two of the world's largest companies – related to any products in the "Wet Shave Category," which includes any non-electric razors and blades and all associated products, such as shaving cream and aftershave.  And, the communications at issue span from January 1, 2007 to October 1, 2014, further complicating the process of locating, reviewing, and preparing a witness.

The fourth noticed topic broadly expands the Subpoena to P&G's category advisors' communications with **any other retailer**, besides Walmart.  Topic four covers "Your role and the

---

[13] *See Hendricks* at 253 ("[T]he Court will grant the motion to quash because all of the subpoenas at issue, including any to subsequent employers of Ackerman, Donner and Spitler, are too broad. Indeed, it is difficult to conceive of subpoenas which could be more expansively written than those at issue."); *Valentine v. Remke Mkts., Inc.*, S.D. Ohio No. 1:10-CV-922, 2012 U.S. Dist. LEXIS 35234, \*13 (Mar. 14, 2012) (Finding portion of the subpoena was overbroad and granting protective order limiting scope); *Spartanburg Regional Healthcare Sys. v. Hillenbrand Industries*, N.D. Ohio No. 1:05MC060, 2005 U.S. Dist. LEXIS 32861, \*9 (Sep. 9, 2005) (Granting motion to quash one category of documents sought in a subpoena as overbroad to the underlying anti-trust action).

nature of Your participation as a category advisor to any retailer (besides Walmart) for wet shave products during the period of January 1, 2007, to October 1, 2014, including but not limited to Your involvement in" eight broad subcategories. Therefore, P&G would also be required to identify and prepare a witness to discuss *any other retailer*, other than Walmart, where P&G may have participated as a "category advisor" for wet shave products. The request is not even limited to any particular geographic area, and so, as drafted, would cover international sales. And, like the first topic, the relevant time frame dates back over 13 years ago.

The fifth topic is, amazingly, even broader. It covers:

8       5.     **The nature and extent of any interactions between (a) Procter & Gamble employees**
9    **serving as a category advisor to Walmart for the Wet Shave Category at any point during the period**
10   **of January 1, 2007, to October 1, 2014, and (b) Procter & Gamble employees serving as a category**
11   **advisor to any other retailer (besides Walmart) for wet shave products at any point during the period**
12   **of January 1, 2007, to October 1, 2014.**

Plaintiffs do not even limit this topic by subject matter. As drafted, if a P&G category advisor for Walmart's Wet Shave Category went to lunch with a P&G category manager for Target's wet shave category that interaction would fall under the scope of this deposition topic.[14]

Finally, the tenth deposition topic requires a P&G corporate representative to be prepared to address "The Documents that You produced in response to any subpoena served upon You in this action, including but not limited to (i) the subject matter of the Documents; (ii) any actions taken related to the Documents . . . ." Like the deposition subpoena, the subpoena *duces tecum* Plaintiffs served on P&G seeks records on extremely broad categories, and for most of those categories, records from January 1, 2007 through October 1, 2014. (*See* Exhibit B to the Woelfel

---

[14] The remaining deposition topics are similarly broad, but are not individually listed to avoid unnecessary repetition. P&G is happy to address the over breadth of the other deposition topics if requested by the Court.

Aff.). It is unreasonable on its face to expect that P&G could prepare a corporate representative to discuss the subject of ***eight years of communications*** between Walmart and P&G and P&G and **any other retailer**.[15]

In the end, the noticed deposition topics are so overbroad that P&G could not even begin to prepare a corporate representative for the deposition, much less do so in approximately two weeks (the time between receipt of the Subpoena and the scheduled subpoena date). The deposition topics are overbroad and constitute an undue burden to P&G. Accordingly, the Subpoena should be quashed.

### B. Plaintiffs Fail to Provide Sufficient Time to Comply with the Subpoena.

This Court must quash the Subpoena because it does not allow P&G a reasonable time to comply with the demand for testimony, particularly given the extraordinary breadth of the proposed deposition topics. Courts in Ohio have quashed subpoenas when there has not been adequate time for a person to make themselves available to testify. *See Blanton v. Cuyahoga Cnty. Bd. of Elections*, 150 Ohio App. 3d 61, 779 N.E.2d 788 (8th Dist. 2002) (Quashing a subpoena where four days was deemed insufficient time for deponent to prepare); *CareFusion 2200, Inc. v. Entrotech Life Science, Inc.*, S.D. Ohio No. 2:15-MC-16, 2015 U.S. Dist. LEXIS 56130, *7 (Apr. 29, 2015) ("Under the circumstances presented in this case, this Court concludes that the March 17, 2015 subpoena failed to provide a reasonable time for compliance.").

P&G did not receive the Subpoena until January 8, 2020, even though the Subpoena is dated December 27, 2019. (*See* Woelfel Aff. At ¶ 2). The Subpoena noticed P&G's corporate deposition for January 23, 2020. (*See id.* at ¶ 3). Based on its receipt of the Subpoena on January

---

[15] P&G objected to the subpoena *duces tecum* on January 9, 2020. Given the breadth of the document requests, including the time period identified by Plaintiffs, as well as P&G's document retention policy, it is unclear how many documents P&G may have responsive to the subpoena *duces tecum*.

8, 2020, P&G had two weeks' notice that it needed to be appear for the scheduled deposition. However, the scope of the topics included in the Subpoena (as discussed above) make it impossible for P&G to possibly prepare for and attend the deposition.

The information covered by the Subpoena topics is not only overly broad, but so is the relevant time period identified by Plaintiffs -- January 1, 2007 to October 1, 2014.  It will be extremely time consuming and unduly burdensome for P&G to seek to retrieve and review the information sought in the broad topics requested, and then prepare a corporate representative, particularly where the identified time period begins over ten years ago.  For these reasons, the compelled attendance of P&G on such short is an undue burden.

**CONCLUSION**

For the foregoing reasons, non-party P&G respectfully requests that the Court quash the Subpoena.  In the alternative, P&G asks that the Court limit the scope of the Subpoena to those topics the Court finds will not subject P&G to an undue burden.

Respectfully submitted,

s/ Mark G. Arnzen, Jr.
Mark G. Arnzen, Jr., Esq. (0081394)
Joseph E. Greiner, Esq. (0090525)
DINSMORE & SHOHL LLP
255 East Fifth Street, Suite 1900
Cincinnati, Ohio 45202
Tel: (513) 977-8200
Fax: (513) 977-8141
Email: mark.arnzen@dinsmore.com
        joseph.greiner@dinsmore.com

*Counsel for The Procter & Gamble Company*

## <u>CERTIFICATION PURSUANT TO S.D. OHIO CIV. R. 37(1)</u>

I hereby certify that before filing I attempted, pursuant to S.D. Ohio Civ. R. 37(1), to resolve the claims asserted therein without the need for judicial intervention. On January 13, 2020, I spoke to Andrew Calderon, counsel for Plaintiffs, about the Subpoena and notified him that P&G intended to file a motion to quash. Mr. Calderon did not offer to discuss the Subpoena or make any offer to limit the scope of the information sought. Thereafter, late in the evening on January 13, 2020, Brian Dunne, also counsel for Plaintiffs, left a voicemail regarding the Subpoena. I responded to his voicemail via email on January 14, 2020, and laid out P&G's objections to the Subpoena and formally notified Plaintiffs of P&G's intention to file a motion to quash in the Southern District of Ohio. We have not received a response to that email, necessitating the filing of this Motion.

s/ Joseph E. Greiner

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and accurate copy of the foregoing has been served via email

and regular U.S. mail to the following this 22nd day of January, 2020:

Brian Dunne, Esq.                              Roy L. Anderson, Esq.
PIERCE BAINBRIDGE BECK PRICE & HECHT LLP        WAGNER, ANDERSON & BRIGHT, P.C.
355 S. Grand Ave., 44th Floor              15901 Viewpoint Road
Los Angeles, CA 90071                          Riverside, CA 92504
bdunne@piercebainbridge.com                    rla@patentattorney.us

Bijal Vijay Vakil, Esq.                        Bryan Alexander Merryman, Esq.
WHITE & CASE LLP                               WHITE & CASE LLP
3000 El Camino Real                            555 South Flower Street, Suite 2700
Two Palo Alto Square, Suite 900                Los Angeles, CA 90071
Palo Alto, CA 94306                            bmerryman@whitecase.com
bvakil@whitecase.com


                                    s/ Mark G. Arnzen, Jr.