# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| SHARIDAN STILES and STILES 4 U, INC., | Case No. 1:20-mc-00002-SJD-SKB |
| Plaintiffs, | |
| v. | District Judge Susan J. Dlott |
| WALMART INC., and AMERICAN INTERNATIONAL INDUSTRIES, | Magistrate Judge Stephanie K. Bowman |
| Defendants. | |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO NON-PARTY THE PROCTER & GAMBLE COMPANY'S MOTION TO QUASH SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION**

Plaintiffs Sharidan Stiles and Stiles 4 U, Inc. (collectively "Plaintiffs" or "Stiles") respectfully submit this memorandum in opposition to The Procter & Gamble Company's ("P&G") Motion to Quash Subpoena to Testify at a Deposition in a Civil Action (the "Motion").

## INTRODUCTION

Much of the Motion theorizes that the scope of the discovery in the underlying Eastern District of California case (the "*Stiles* Action") does not encompass the subpoenaed topics. This theory has been rejected. After P&G filed the Motion, the Eastern District of California, where this case was filed, rejected the very same arguments on the scope of discovery. Plaintiffs may pursue discovery relating to their horizontal price fixing theory, the district court held. And that includes discovery relating to Walmart's category management program. This Court should follow the Eastern District of California's lead on what is within the scope of discovery—and this subpoena is within it.

P&G is not some fringe player here. It's at the center. Walmart, P&G, and other major suppliers were engaged in a price fixing conspiracy. This price fixing conspiracy occurred under the auspices of Walmart's category management program, ███████████████████ ███████████████████████████████████████████████████████████████████ ██████████████████████

P&G—████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ████████████████████████████████████████

1

The contours of this scheme first emerged in discovery. Produced documents alarmingly revealed ██████████████████████████████████████████████ a *per se* violation of antitrust laws. P&G, ███████████████████████████████████████████████████ ██████████████████████████████████████████████████ P&G is thus not only relevant to the *Stiles* Action; its conduct is at the heart of the matter.

As P&G tells it, there is no "allegation that P&G even participates in the relevant market defined by Plaintiffs, much less has a large share of that market." Motion at 10 n.7. This claim is belied by the documents. And it is also belied by the FTC. A little over a week ago, the FTC filed an antitrust complaint recognizing that P&G is a "longstanding and stable duopol[ist]" in wet shave razors. (Terzian Decl., Ex. 33 (Complaint, *In re Edgewell Personal Care Co.* (F.T.C. Feb. 2, 2020) ¶¶ 1–2.) The other duopolist was Edgewell—██████████████████████████ ████████ *Id.*

On a more granular level, P&G argues that its participation in the wet shave category is not subject to discovery because the operative complaint does not reference the category advisory program. The district court in the Eastern District of California has rejected this argument. P&G also argues that the *Stiles* court's denial of a motion to compel on procedural grounds (it was found untimely) shows an intent to limit the scope of discovery. The *Stiles* court summarily rejected this argument as well. This Court should hold similarly.

Aside from P&G's already-rejected arguments, the only substantive objections remaining are vague, boilerplate, and unsubstantiated relevance and burden objections. None of them form a proper basis to quash Plaintiffs' subpoena.

P&G also makes two meritless procedural arguments. First, it argues that Plaintiffs failed to tender witness fees. But it omits the fact that Plaintiffs cured this by serving a new subpoena

that tendered witness fees. P&G also complains that the deposition's notice date was too soon. But P&G never asked to change the date, and the noticed deposition date was not unreasonable under well-established law in this district.

There is no legitimate basis for P&G to seek to quash the subpoena. The Motion should be denied.

## BACKGROUND

### I.      The *Stiles* Action and the Revelation of the Wet Shave Cartel

Plaintiffs assert, among other things, claims under Section 1 of the Sherman Act, the California Cartwright Antitrust Act, and for patent infringement in the underlying *Stiles* Action.[1] Plaintiff Sharidan Stiles is the inventor of the Stiles Razor, an innovative personal styling razor sold through her company, Stiles 4 U, Inc. (*See* Ex. 1[2] (Fourth Am. Complaint ("FAC")) ¶ 17.)

Beginning in 2007, Plaintiffs sold their razors through Walmart and did so profitably for nearly six years. (*See id.* ¶¶ 22–48.) Then, without explanation, Walmart told Plaintiffs in 2012 that their products were not selling and were being "deleted" from Walmart's shelves. (*Id.* ¶ 48.)

---

[1] *Stiles* v. *Walmart, Inc. et al.*, Case No. 2:14-cv-02234-TLN-DMC (E.D. Cal.) ("*Stiles*").

[2] All citations to "Ex. __" reference the exhibits annexed to the concurrently filed Declaration of Dan Terzian in Support of Plaintiffs' Opposition to P&G's Motion to Quash, dated February 12, 2020 (the "Terzian Decl.").

█████████████████████████████████████████████████████

████████████████████████████████

     After lengthy Rule 12 motion practice, discovery commenced. That discovery yielded several stunning revelations. ████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

████████████████████████████████

     ████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

████████████████ In short, category advisors:

    1.    ████████████████████████████████

    2.    ████████████████████████████████████████████

    3.    ███████████████████████████

P&G was directly involved in this. ████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

This discovery made it apparent ████████████████████████████
████████████████████████████████████████████████████████████
███████████

## II.  P&G's Involvement in the Cartel and Elimination of Plaintiffs' Product

Walmart and P&G not only brazenly exchanged competitor price and output information, they weaponized it. By 2008, Stiles' products were performing well, selling approximately six units per store/per week in 2008. (*See* FAC ¶ 29.) When Heather Ronchetto took over as Stiles' contact at Walmart in June 2008 (*id.* ¶ 30), Stiles Razor sales were suddenly hampered by Walmart, with Stiles' products being removed from stores where the products performed best (*id.* ¶ 34). Unbeknownst to Stiles, however, ███████████████████████████████
████████████████████████████████████████████████████████████
███████████████████████████████████

████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████



(*Id.*)



███████████████████████████████████████████████ Simply put, the

evidence shows that Walmart agreed with ████████████████████████

████████████████████████████████████

## III. The *Stiles* Court Found P&G's Role as a Category Advisor Is Relevant And Within the Scope of Discovery

On June 28, 2019, shortly after Plaintiffs obtained and reviewed the documents exposing P&G's (and others') role in the antitrust conspiracy, Plaintiffs moved the *Stiles* Court for leave to join P&G, Coty, Inc. ("Coty"), and Pacific World Corporation ("PWC") as additional defendants (the "Joinder Motion"). (*See* Ex. 22 (Joinder Motion).)

On November 19, 2019, the *Stiles* Court—without addressing the merits of the allegations against P&G, Coty, and PWC, and without prejudice—denied the motion on procedural grounds. (*See* Ex. 23 (two-page order denying the Joinder Motion).) There was no holding as to the claims against P&G, Coty, and PWC, and there was no discussion by the Court as to the relevance of evidence pertaining to the three suppliers.

Plaintiffs requested the *Stiles* Court's leave to take additional depositions on December 6, 2019. In the request, Plaintiffs explained to the magistrate judge presiding over the *Stiles* Action that the antitrust conspiracy extended beyond Defendants and included P&G, which meant that a deposition of a P&G representative was necessary. Plaintiffs explained:



(Ex. 24 at 3 (Motion to Compel Additional Depositions and/or Leave to Take Depositions in Excess of 10).) Walmart objected, arguing that the denial of the motion for joinder somehow rendered evidence pertaining to P&G irrelevant or out of the scope of discovery. The court granted Plaintiffs' motion over that objection and with no limitation. (*See generally* Ex. 25 (Order granting additional depositions).)

The *Stiles* Court subsequently reaffirmed its position that P&G's role as a category advisor is relevant and within the scope of discovery. On February 3, 2020, the parties in the *Stiles* Action filed a Joint Statement addressing various discovery issues, including a dispute about the deposition topics of Walmart's Rule 30(b)(6) witness. Specifically, the parities' dispute regarded the relevance of topics on Walmart's category advisor program. (*See generally* Ex. 26 (Joint Statement re Deposition Topic Dispute ("Joint Statement").) The *Stiles* Court agreed with Plaintiffs on each of the disputed topics and compelled Walmart to produce a witness to testify on the category advisor topics, including topics related to the Wet Shave category over an eight-year period, from 2007 to 2014. (*See* Ex. 27 (Order regarding deposition topic dispute) at 6-11.) Indeed, during the hearing on February 5, 2020, the *Stiles* Court made clear that it found that the category advisor program—including P&G's participation as a category advisor in the Wet Shave category—was directly relevant. (*See, e.g.*, Ex. 28 (February 5, 2020 Hearing Transcript) at 14:1-20:18 (arguments by counsel regarding the relevance of category advisors, including P&G, and the Court's determination that the topic is relevant), at 26:8-28:14 (Walmart's counsel objecting to the burden of preparing a witness to testify providing as an example of whether "Walmart g[a]ve Procter & Gamble x, y, z razor suppliers suggested manufacture retail price" and the Court finding the topic relevant and sufficiently specific).)

P&G now appears before this Court pressing virtually identical arguments, rehashing a series of arguments raised by Walmart that the district court in the Eastern District of California has already rejected.

### IV.       The P&G Subpoena

On January 7, 2020, Plaintiffs timely served P&G with a subpoena to testify at a Rule 30(b)(6) deposition (the "Subpoena"), preliminarily designating January 23, 2020 as the deposition date—16 days after service. (*See* Ex. 29 (Subpoena); Ex. 30 (proof of service).) The Subpoena identified ten particularized topics on which deposition testimony Plaintiffs are seeking.

On January 13, 2020, counsel for Plaintiffs and P&G spoke on the phone regarding the subpoena. Plaintiffs' counsel inquired whether P&G would appear for the subpoenaed deposition. P&G's counsel indicated that P&G would not appear and that it would file a motion to quash. P&G further stated that it had not yet drafted the motion to quash and was not sure when it would file it but that it would be before the deposition date. Later that day, Plaintiffs' counsel called back P&G's counsel to inquire about the specific grounds for P&G's motion to quash and left a voicemail. P&G responded the following day via email. (Terzian Decl. ¶ 4.)

Seven days passed and Plaintiffs did not receive service of a motion to quash by P&G. On January 21, 2020, two days before the subpoenaed deposition, Plaintiffs' counsel emailed P&G's counsel to inquire whether P&G still intended to file a motion to quash before the deposition. (*Id.* ¶ 5.) P&G's counsel later responded that it would file its motion the following day. (*Id.*) Plaintiffs received notification of P&G's Motion on January 22, 2020.

### ARGUMENT

Determining the scope of discovery is within the Court's discretion. *Steely v. Allstate Indem. Co.*, No. 1:11-CV-517, 2012 WL 2072869, at *2 (S.D. Ohio June 8, 2012) (Bowman, J.) (citing *Bush v. Dictaphone Corp.*, 161 F.3d 363, 367 (6th Cir. 1998)). As the United States Court

of Appeals for the Sixth Circuit has recognized, "[t]he scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad." *Lewis v. ACB Bus. Serv., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998). Specifically, discovery is more liberal than the trial setting, as Rule 26(b) allows any "line of interrogation [that] is reasonably calculated to lead to the discovery of admissible evidence." *Id.* (quoting *Mellon v. Cooper-Jarrett, Inc.*, 424 F.2d 499, 501 (6th Cir. 1970)). "In other terms, the Court construes discovery under Rule 26 broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Steely v. Allstate Indem. Co.*, No. 1:11-CV-517, 2012 WL 2072869, at *2 (S.D. Ohio June 8, 2012) (Bowman, J.) (internal quotations omitted). The same "general relevancy standard [of Rule 26]" apply to third-party subpoenas issued under Rule 45. *Hilton-Rorar v. State and Fed. Commc'ns, Inc.*, No. 5:09-CV-01004, 2010 WL 11691868, at *2 (N.D. Ohio Jan. 5, 2010).

The moving party "bears the burden of establishing that the issued subpoena violates Rule 45. *Id.* However, if the evidence "sought by the subpoena [is] relevant and [is] sought for good cause, then the subpoena should be enforced unless the [evidence is] privileged or the subpoenas are unreasonable, oppressive, annoying, or embarrassing." *Id.* (internal quotations omitted).

I.      **The Subpoena's Topics Are Highly Relevant, and P&G Is Not Unduly Burdened**

The Subpoena sought testimony on ten particularized topics related to P&G's role as a category advisor, including, among other topics:

- Topic Nos. 1, 2: P&G Communications with Walmart and Walmart Wet Shave category advisors, relating to price, cost, add/delete/carryover decisions for products in the Wet Shave Category;

- Topic Nos. 3, 4: P&G's role and nature of participation as a category advisor for Walmart or any other retailer;

12

- Topic No. 5: The interactions between P&G employees serving as Walmart category advisors and P&G employees serving as category advisors for other retailers;

- Topic Nos. 6, 7: The rules and safeguards governing P&G's participation in the Walmart category advisor program, and P&G's policies and procedures to prevent violations of laws;

- Topic No. 8: compensation P&G received in connection to serving as a Walmart category advisor;

- Topic No. 9: Stiles or any product by Stiles.

These topics are directly relevant to Plaintiffs' claims. As described above (pp. 3–9, *supra*), documents produced in discovery show that Walmart's ███████████████████████ ████████████████████████████████. Indeed, Walmart's category advisors were ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ███████████████████████████████████ P&G was ████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ███████████████████████████████ The topics in the Subpoena relate directly to this. The topics also relate to the contours, constraints, and workings of Walmart's category advisor program, ████████████████████████████████████

P&G's relevance arguments are unavailing. These arguments mirror Walmart's arguments in the *Stiles* Action—which the *Stiles* Court rejected. The crux of P&G's argument is that the Subpoena topics are irrelevant because P&G and the category advisors were not named in the FAC and the *Stiles* Court denied Plaintiffs' leave to amend. (*See* ECF No. 1 at 8–11.) During the

13

February 5, 2020 hearing on the dispute of deposition topics, Walmart's counsel challenged the relevance of the category advisor program on the grounds that it was not included in the FAC. (*See*, Ex. 28 (February 5, 2020 Hearing Transcript) at 15:4–21 (Walmart's counsel arguing that deposition topic related to category advisors is irrelevant and seeking a protective order on the topic arguing that "none of [the category advisor allegations are] in the complaint. None of that is relevant to the allegations in the complaint.").

The *Stiles* Court rejected this argument and ordered Walmart to testify on the topics relating to category advisors. The *Stiles* Court also rejected the notion that a prior order denying leave to join P&G and other suppliers as defendants in that action—which was without prejudice and based on procedural grounds—somehow precluded this discovery. Instead, the *Stiles* Court found this prior order P&G irrelevant to the Sherman Act Section 1 and Cartwright Act claims currently before the Court.

At bottom, P&G's rehashes the same arguments made by Walmart to the *Stiles* Court— which that court rejected. And this Court should as well. The *Stiles* Court provided leave for additional depositions over the same objection by Walmart. (*See* Ex. 31 at 34–38 (Walmart's opposition brief to Plaintiffs' motion for additional depositions).) And the *Stiles* Court explicitly stated that it granted Plaintiffs' leave to take additional depositions because Plaintiffs "made the required showing as to each of the witnesses listed," including P&G. (*See* Ex. 27 (Order regarding deposition topic dispute) at 5.)

P&G also attacks only three out of the ten topics. (ECF No. 1 at 13.) To begin with, general objections—devoid of any substance—to deposition topics do not justify a protective order. The law is clear that "the party moving for a protective order must cite particular and specific facts

rather than conclusory allegations to establish good cause for protection." *See Rofail*, 227 F.R.D. at 55. No such facts are cited here for any topic.

Even for the three topics to which P&G more directly objects, there is no basis for a protective order. P&G argues that two of the topics are inappropriate because they seek testimony concerning P&G's role in the category management programs of retailers other than Walmart. (ECF No. 1 at 13.) The *Stiles* Action, however, involves allegations that Stiles was not only banned from Walmart's shelves, but was blackballed from other U.S. retailers as well. (*See* FAC ¶ 121.) P&G and its other co-conspirators may have accomplished this to some extent by exerting their power over other category management programs. P&G also argues that one of the topics is irrelevant as it seeks information regarding compensation for its service as a category advisor and states in conclusory fashion that the topic "has absolutely no bearing on any of the claims asserted in the FAC." (ECF No. 1 at 13.) This argument has no merit. Evidence of excessive compensation is probative of intent to engage in an illegal antitrust conspiracy. Conversely, evidence of scant compensation can suggest that P&G is benefiting from its work as a category advisor through other means, such as by having the opportunity to artificially inflate the price of its products.

P&G's final objection is to the burden of producing testimony. P&G cherry-picks four out of the ten topics to argue that the Subpoena as a whole is overly burdensome. (ECF No. 1 at 15–18.) P&G's burden challenges are meritless. The *Stiles* Court has already found that the temporal scope P&G is challenging here to be reasonable in connection to deposition testimony about the category advisor program in the Wet Shave category. (*See* Ex. 32 (Order regarding deposition topic dispute) at 6–11.)

Likewise, P&G's argument that testifying on the documents it produced in response to the document subpoena Plaintiffs served does not make sense. P&G has refused to produce any

documents to Plaintiffs in response to the document subpoena or otherwise. As such, P&G's assertions of undue burden are not enough to resist discovery.

P&G's overbreadth arguments also ring hollow because it never attempted to narrow their scope. And even if the four challenged topics were overbroad (they are not), quashing the entire Subpoena is not the appropriate relief. *See Wiwa* v. *Royal Dutch Petroleum Co.,* 392 F.3d 812, 818 (5th Cir. 2004) ("Generally, modification of a subpoena is preferable to quashing it outright"); *Flanagan* v. *Wyndham Int'l. Inc.*, 231 F.R.D. 98, 102 (D.D.C. 2005) ("A court should be loathe to quash a subpoena if other protection of less absolute character is possible").

In sum, P&G has failed to satisfy its burden of demonstrating that the Subpoena topics are not relevant. Likewise, P&G has not established that each one (or any) of the Subpoena topics are overly burdensome. The Court should deny P&G's motion to quash and enforce the Subpoena. *See Hilton-Rorar* WL 11691868, at *2 (if the evidence "sought by the subpoena are relevant and are sought for good cause, then the subpoena should be enforced unless the documents are privileged or the subpoenas are unreasonable, oppressive, annoying, or embarrassing.")

## II.       The Subpoena Is Valid

P&G also challenges the propriety of service and the sufficiency of the time given to respond. Those challenges are meritless as well.

### A.       Any purported deficiency in service has been cured

In its Motion, P&G argues that service was improper because witness fees did not accompany the Subpoena. (ECF No. 1 at 4-5.) Plaintiffs cured this purported deficiency after Plaintiffs' counsel learned of it on January 22, 2020, when P&G filed this Motion.[3] Moreover, out of an abundance of caution, Plaintiffs' counsel again served the Subpoena on February 5, 2020,

---

[3] Before the motion, P&G had informed Plaintiffs of its position (among others) that the "deposition subpoena was not properly served under Civ. R. 45 . . . ." P&G did not explain what it meant by that.

accompanied by a check for the witness' attendance and mileage reimbursement. (Terzian Decl. ¶ 6; Ex. 32 (February 5, 2020 Proof of Service).)

In light of the fact that the deficiency has been cured (if it even existed to begin with), there is no plausible basis to quash to subpoena on this ground. *See e.g.*, *WhitServe LLC* v. *Computer Packages, Inc.*, No. 3:06-CV-1935, 2013 WL 6169280, at *3 (D. Conn. Nov. 22, 2013) (court did not quash subpoena for inadequate fee where issuing party took prompt action to cure deficiency); *PHE, Inc.* v. *Dep't of Justice*, 139 F.R.D. 249, 255 (D.D.C.1991) (finding, "to the extent that the failure to accompany the Rule 45 subpoena . . . with a check rendered the subpoenas technically defective, the subsequent tender of the check corrected any deficiency . . . ."); *RPM Pizza, LLC* v. *Argonaut Great Cent. Ins. Co.*, 2014 WL 258784, at *1 (M.D. La. Jan. 23, 2014) ("deficiency [of not tendering witness fees] alone is not sufficient to quash the subpoena since it could have been readily cured, and there is no suggestion that Domino's did not receive actual notice of the deposition."); *Adams* v. *Dolgencorp, LLC*, No. 11-CV-784, 2012 WL 1867123, at *1 (M.D. La. May 22, 2012) (finding that sending payment to the non-party days after the subpoena was served cured any alleged defect in advance of the scheduled deposition) (citing *Meyer* v. *Foti*, 720 F.Supp. 1234, 1244 (E.D.La.1989)).[4]

### B.    The Subpoena provides a reasonable time to respond

P&G argues that the Subpoena did not provide P&G with reasonable time to respond. (ECF No. 1 at 18-19.) Not so. Courts have held fourteen days from the date of service to be presumptively reasonable time to comply with a subpoena. *McClendon v. TelOhio Credit Union, Inc.*, No. 2:05-CV-1160, 2006 WL 2380601, at *2 (S.D. Ohio Aug. 14, 2006) (notice of fourteen

---

[4] As discussed, *infra* at n.5, even if the Court determines that service was effectuated on February 5, 2020, instead of January 7, 2020, the Subpoena is still timely, and P&G is not prejudiced.

days is presumptively reasonable); *accord Brown v. Hendler*, No. 09-CV-4486, 2011 WL 321139, at *2 (S.D.N.Y. Jan. 31, 2011) ("Although Rule 45 does not define 'reasonable time,' many courts have found fourteen days from the date of service as presumptively reasonable.").

Here, the Subpoena was served to P&G on January 7, 2020 (*see* Ex. 30), and Plaintiffs preliminarily designated January 23, 2020 as the deposition date (*see* Ex. 29)—16 days after date of service and well over the time courts have found reasonable.[5] Moreover, P&G did not even attempt to discuss setting the deposition for a later date. Thus, P&G's argument that the Subpoena (or Plaintiffs' counsel) did not provide sufficient time to respond is merely disingenuous pretext for stonewalling discovery.

## CONCLUSION

For the foregoing reasons, the Court should deny P&G's motion to quash the Subpoena.

Dated:  February 12, 2020                      Respectfully submitted,

By:  s/ *Thomas D. Warren*
Thomas D. Warren (0077541)
twarren@piercebainbridge.com
**Pierce Bainbridge Beck Price & Hecht LLP**
30195 Chagrin Blvd., Suite 210N
Pepper Pike, OH 44124
tel: (213) 262-9333
fax: (213) 279-2008

*Counsel for Plaintiffs Sharidan Stiles and
Stiles 4 U, Inc.*

---

[5] When Plaintiffs served the Subpoena the second time on February 5, 2020, they designated a February 14, 2020 response deadline. The contents of the Subpoena are identical to the previously served Subpoena, which was served on P&G on January 7 and P&G admits it received on January 8. Thus, P&G has been on notice of the Subpoena since at least January 8 and thus even assuming *arguendo* that service was effectuated on February 5, 2020, the response deadline of February 14, 2020 is reasonable. *See e.g., Mercexchange, LLC* v. *eBay, Inc.*, 2007 WL 485224, at *1 (D. Conn. Feb. 12, 2007) (12 days to respond was reasonable); *Mariner Health Care, Inc.* v. *Indemnity Ins. Co. of North America, Inc.*, 2005 WL 44521, * 2 (E.D. Penn. Jan. 7, 2005).